**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ELTON WILLS,<br><br>*Defendant*. | Criminal Action No. 26-cr-171 (RDM) |

**MEMORANDUM OPINION AND ORDER**

The government asks the Court to set aside the Magistrate Judge's determination that Defendant Elton Wills should be released from custody pending trial. *See* Dkt. 46. For the reasons explained below, the Court will **GRANT** the government's motion, **VACATE** the Magistrate Judge's release order, and order Defendant Wills **DETAINED** pending trial.

## I. LEGAL STANDARDS

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act permits pretrial detention only in "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). The question for the Court is whether any "condition or combination of conditions" less restrictive than detention "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). If not, the Court "shall order the detention of the [defendant] before trial." *Id.* "The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community [must] be supported by clear and convincing evidence," and the

government bears the burden of proof as to that evidence. *Id.* § 3142(f)(2)(B). Only a preponderance of the evidence, however, is required to support "[a] determination that an individual is a flight risk." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019).

Where a defendant is ordered released by a magistrate judge, "the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a). Such motion "shall be determined promptly." *Id.* Although the D.C. Circuit has yet to opine on the question, *see United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021), substantial precedent supports the view that a magistrate judge's detention order is subject to de novo review by the district court, *see United States v. Hunt*, 240 F. Supp. 3d 128, 132–33 (D.D.C. 2017) (identifying cases supporting this proposition from the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits), and this Court has adopted that view, *see*, *e.g.*, *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).

## II. PROCEDURAL HISTORY

On August 20, 2026, a grand jury returned a seven-count indictment against Defendants Elton Wills and Cinquan Cartledge. Dkt. 46 at 16; *see also* Dkt. 25 (Superseding Indictment). As relevant here, Defendant Wills was charged with Assault with Intent to Commit Robbery While Armed in violation of 22 D.C. Code §§ 401, 4502, and two counts of Assault with a Dangerous Weapon in violation of 22 D.C. Code § 402. Dkt. 46 at 16. A warrant for Wills's arrest was executed on October 9, 2026. Dkt. 36. At a detention hearing on October 21, 2026, Magistrate Judge Faruqui granted Defendant Wills's oral motion for release from custody, subject to a number of conditions, including home incarceration and location monitoring. *See*

Minute Entry of 10/21/2026; Dkt. 47 at 2–3. The government promptly moved for review of the release order. Dkt. 46.

## III. ANALYSIS

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

Here, all four factors weigh in favor of detention. First, the violent nature and circumstances of the charged offense support detention. Wills has been indicted on one count of Assault with Intent to Commit Robbery While Armed and two counts of Assault with a Dangerous Weapon. Wills and his codefendant are alleged to have violently assaulted two victims in broad daylight while the victims' child was playing nearby. *See* Dkt. 46 at 23. Wills is alleged to have attempted to rob Victim One through use of counterfeit cash. *Id.* at 3–4. When Victim One refused the counterfeit cash, Wills is alleged to have grabbed him and placed him in a headlock. *Id.* at 4. A violent struggle then ensued, which was captured in significant part on closed-circuit video recording. In that video, Wills and Victim One can be seen fighting on the ground. Cartledge then exits the car and approaches Wills and Victim One. Cartledge and Wills then struggle with Victim One and appear to hoist and drag Victim One. Victim One falls to the ground. When Victim One's wife (Victim Two) runs toward them, Wills can be seen violently swinging his arm to strike her. Cartledge then retrieves a gun from the car and allegedly threatens to shoot Victim Two. *Id.* at 5. At that point, both victims

run to safety, and after Wills briefly pursues the victims, he returns to Cartledge's car, and Wills and Cartledge drive off. *Id.* at 8. Victim One sustained a laceration to his face and scratches to his hands. *Id.* at 7–8.

Text messages between Wills and Cartledge offer strong support for the government's allegations that Wills and Cartledge planned to rob Victim One and that both intended to use a gun in committing that crime. At a minimum, it appears that Wills was aware that Cartledge had a gun in his possession at the time of the attack, which was available in their scheme to rob Victim One. A few hours before the alleged robbery, Wills sent a text message to Cartledge, asserting: "Da Move Ready Bruh." Dkt. 46 at 14. Then, about two minutes before the alleged robbery, Wills sent another text to Cartledge, asserting: "On Nutz I Should Get da Jaint." *Id.* at 15. Law enforcement suggests that "Move" is a slang term for a robbery and that "Jaint" is likely a misspelling of "Joint," which is a slang term for a firearm. *Id.* Wills does not dispute that the terms "move" and "joint" are commonly used in the manner that law enforcement suggests. Although there is no evidence that Wills personally possessed or brandished the handgun, the evidence suggests that he knew that the gun was in the car with Cartledge, that he regretted not having the gun in his possession when he first approached Victim One ("O[h] Nutz"), that he knew that the gun was available to assist in Defendants' plan to rob Victim One, and that he is legally responsible for Cartledge's decision to brandish the gun while threatening to shoot Victim Two. The Court, accordingly, concludes that the alleged crime was both planned and violent.

Second, the weight of the available evidence also counsels in favor of detention. As noted above, much of the interaction-turned-altercation between Wills, Cartledge, and the victims—including assaults on both victims, and Cartledge's brandishing of the gun—is

captured on video. The government has also proffered evidence of Wills and Cartledge fleeing from the police, and a screenshot from body camera footage showing the handgun that one of them discarded near a playground. Cellphone records further show that Wills had prior interactions with Victim One before the alleged robbery and communicated with him on the day of the alleged robbery. *Id.* at 3 n.2. And, as discussed above, a search of Wills's and Cartledge's cell phones shows that they planned the robbery and planned to use a gun, if necessary. *Id.* at 14–15. To be sure, Victim One's initial account of the relevant events might be subject to impeachment, but the video and text exchanges speak for themselves. In sum, although the Court is cognizant of the preliminary posture of the case, the weight of the available evidence supports detention.

Third, Wills's history further supports an inference that less restrictive measures would be inadequate to ensure his appearance and the safety of the community. Defendant has three prior convictions and sixteen prior arrests. Dkt. 40 at 1. His prior convictions include a 2021 conviction for unlawful possession of a firearm, a 2013 conviction for unlawful possession of liquid PCP, and a 2012 conviction for second-degree theft. *Id.* at 3–4. According to D.C. Probation records, Wills's term of probation for this last charge "was closed due to non-compliance." *Id.* at 4. Since then, Wills was charged in Superior Court in March 2026 for unlawful possession of liquid PCP. *Id.* at 3.

Perhaps most notably for present purposes, at the time of the alleged robbery and assault at issue here, Wills was on pretrial release from the D.C. Superior Court on the PCP charge, and he has failed to comply with the terms of that pretrial release in multiple respects. He failed to attend a required hearing on July 8, 2026, *id.*, and the Probation Office represented to the Court at the hearing on October 21, 2026, that Wills has failed to appear for at least three

drug tests that were required as a condition of his pretrial release, *see id.* (listing release conditions). At Wills's last drug test on May 6, 2026, Probation reports that he tested positive for multiple controlled substances, including amphetamines and opiates. Wills's history of noncompliance with release conditions in other cases—and the evidence that he committed the instant offense while on pretrial release—strongly supports detention here. The fact that he failed to appear in Superior Court, moreover, reflects both a disregard for the terms of his pretrial release and, even more importantly, that he poses a risk of flight.

At the detention hearing before this Court, Wills's counsel attempted to explain his failure to appear in the Superior Court case, and his failure to comply with the drug-testing condition, by noting that Wills left his cellphone at the scene of the crime at issue in this case and, thus, lacked access to his calendar and contacts. That explanation is both unpersuasive and at odds with a defendant's obligation to ensure that he complies with the conditions of pretrial release and that he appears, as required, in court. Wills was out of compliance with the terms of his Superior Court pretrial release for a period of months. Most notably, he failed to appear in Superior Court on July 8, 2026, and was not arrested on the bench warrant issued in that case until October 7, 2026. *Id.* It is difficult to believe that he was simply at a loss about what to do—or who to contact—during that three-month period. The more likely explanation is that either he never intended to appear in that matter or that he failed to appear because he knew that his appearance would lead to his arrest in this matter. Either way, his explanation does not withstand scrutiny, and his failure to appear in the Superior Court case raises significant concerns about whether he would comply with this Court's release order or appear in Court, as required.

Finally, the Court finds that Wills's release would pose a substantial danger to the

community. As discussed, the available evidence strongly supports the government's allegation that Wills used physical force to effectuate a robbery and that he participated in the robbery knowing that his co-defendant possessed a firearm and regretting that he did not have the gun in his own possession moments before approaching the victim. After Wills and Cartledge fled the scene with Victim One's phone, moreover, Victim One's cousin called Victim One's phone, and later reported that whoever answered the call, Wills or Cartledge, threatened to return to Victim One's home to kill him. Dkt. 46 at 27. Wills's history of criminal conduct and noncompliance with pretrial release conditions further indicate that less restrictive methods would be insufficient to ensure the safety of the community.

The Court accordingly concludes that the government has carried its burden of demonstrating by clear and convincing evidence that detention is necessary to ensure the safety of the community. 18 U.S.C. § 3142(f)(2)(B).

The government has also shown by more than a preponderance of the evidence that Wills poses a risk of flight. *See Vasquez-Benitez*, 919 F.3d at 551. As described above, Wills fled when followed by the police after the alleged robbery, and failed to appear (or to submit to drug testing) as required by conditions of his pretrial release from Superior Court. Although GPS monitoring and his mother's active supervision might help, they are insufficient here in view of the demonstrated risk (and history) of Wills's failure to appear. The availability of a third-party custodian and location monitoring can, at times, increase the prospect that a defendant will comply with the conditions of his pretrial release and will appear for court proceedings. But, here, the Court must also consider Wills's recent and demonstrated history of non-compliance with the terms of his pretrial release and his failure to appear, as required by a court order. The evidence that Wills committed a violent crime, apparently for the purpose

of obtaining illegal drugs, while on pretrial release adds to the risk that he poses both a danger to the community and a significant flight risk.

Accordingly, the Court also finds by a preponderance of the evidence that Wills poses a risk of flight justifying pretrial detention.

## CONCLUSION

For the foregoing reasons, the Court concludes that no condition or combination of conditions of release will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The government's motion to vacate the Magistrate Judge's release order, Dkt. 46, is therefore **GRANTED**. The release order is hereby **VACATED**, and Defendant Wills is ordered **DETAINED** pending trial.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: October 26, 2026